The next case today is Consumer Data Industry Association v. Aaron M. Frey et al., Appeal No. 20-2064. Attorney Taub, please introduce yourself for the record and proceed with your argument. Good morning again, Your Honors. My name is Chris Taub from the Maine Attorney General's Office. Judge Barrett, with your permission, may I reserve one minute of rebuttal time? You may. At issue in this case are two state laws that regulate very discrete aspects of consumer reports relating to Maine consumers. One of them applies to the reporting of debt incurred as a result of medical expenses, and the other applies to debt incurred as a result of economic abuse. The Appellee claims that both of these laws are preempted by a provision in the Federal Fair Credit Reporting Act, 15 U.S.C. section 1681b1e, which states, ìNo requirement or prohibition may be imposed under the laws of any state with respect to any subject matter regulated under section 1681c of this title relating to information contained in consumer reports.î The parties differ in their interpretation of this provision. The Appellee is focusing on the phrase, ìrelating to information contained in consumer reports,î and from that it claims that this means that any state law that requires or prohibits information on consumer reports is preempted. That interpretation, though, turns the phrase ìwith respect to any subject matter regulated under section 1681cî into surplusage. And just to make this clear, if as Appellee contends, Congress had intended to preempt all state regulation of consumer reports, it could have simply said, ìNo requirement or prohibition may be imposed under the laws of any state relating to information contained in consumer reports.î But Congress did not do that and instead added the phrase ìregulatedî. Excuse me, Mr. Tao. Congress could have said that, but we canít dictate to Congress what language it uses. And the key question, it seems to me, is whatís wrong with the Appelleeís argument that the ìrelating toî language, consistent with the structure of the statute and the legislative history, ought to be read as descriptive rather than limiting. So there are a couple of problems with that argument, Your Honor. First, with respect to the idea that Congress could have written this differently, what I had intended to say is that thereís a basic tenet that we avoid interpreting a statute to have surplus language in it. And I think what that means in this case is that under the Appelleeís interpretation, the phrase ìregulated under section 1681Cî is deprived of any meaning. It just becomes surplus language. But there is another equally valid tenet that says that we have to look at the structure of the statute as a whole, and when you look at analogous provisions in the statute, Congress seems to have adopted, or at least arguably has adopted, a pattern of using this descriptive type of language following its initial statement. The bottom line here is what did Congress intend? Thatís what all of us are trying to figure out. Yes, I agree. And I think, I agree, Your Honor, that Congress followed a pattern in 1681T. And I think that that pattern is essentially to preempt state laws that address matters that are regulated under a particular portion of FCRA, and then to have a descriptive phrase that describes what that provision is. So relating to information contained in consumer reports, thatís the descriptive phrase. Or as the Second Circuit found, itís just a shorthand way of referring to what 1681C covers. Itís simply a notation or a description. Thatís the notation that the title uses, right? Exactly. And I think that just highlights the fact that Congress was simply intending to provide a description or a shorthand reference to the statute. Now, itís true that on your reading, that language is doing no work at all, right? Thatís a fair point, Your Honor. I think under our reading, itís doing work in the sense that itís helpful language. Five minutes remaining. When a reader is looking at the statute in its entirety, itís very easy for the reader to see what the specific statute thatís being referenced to relates to, rather than having to turn to the statute itself. But that said, Your Honor, certainly the statute would have worked the same way without that descriptive phrase, but I think the descriptiveÖ Can I just ask you how your reading practically worked, what the consequences of your reading would be, and then if you could try and spin out for me the logic of why Congress would want to do what you say it did. So, let me just give you a couple of examples and you tell me. Is the point of your reading that a state regulation that does not have as its object the regulation of the subject matter covered by a particular provision is not preempted, even if such a state regulation would in operation cover things that that provision covers? Do you follow that? I think so, Your Honor. So, if I understand the question, our position is that state laws are not preempted just because they sort of cover the same general subject matter that the FCRA provision covers. So, for example, itís not preempted just because Congress could have included something in that provision but chose not to. Iím asking a slightly different way. If you had a provision that regulated reporting of medical debt generally to the citizens of Maine, some of those citizens would be veterans. Does the fact that it doesnít target veteransí medical debt mean that itís fine and not preempted even though it would apply to veterans with medical debt? So, thatís an issue that really hasnít been fleshed out because this is a facial challenge. Thatís why Iím asking the question. I want to know what your view is on that. I think arguably, and again, this is something that we havenít briefed or researched, I think arguably the Maine law could be preempted as applied to veteran medical debt. So, it might be that because CongressÖ So, can you just explain to me why Congress would want to set up a situation in which states could benefit everybody but veterans? Well, I mean, I think that in this case, and I donít really know what the legislative history is behind the veteran medical debt, but my assumption is that Congress felt that for whatever reason, veterans needed special protection. Yeah, and your view is that consequence of them getting that special protection would be that Maine can give even more protection to everybody but veterans. Yes. That is our view, and certainlyÖ That seems not an obvious position for the Congress that Iím familiar with to take. Well, I think thereís sort of a general principle that Congress can set sort of minimum standards that states are then free to exceed. I think in this case, if Congress felt that what it did wasÖ Youíre notÖ You are not ruling out the possibility that the state of Maine, if they regulated medical debt, could apply that regulation even to veteran medical debt, so long as the state regulation doesnít have as its object the subject matter of medical debt. I understand because that seems to be somewhat the logic of the California case that you refer us to. Yes, Your Honor. That is an argument that we think would be persuasive. Itís just not one that weíve had to advance in the course of this case. So you think we can rule for you either way? Yes, I think this is a facial challenge. Okay, and then the last question is just to identify that on your view what the subject matter is. Itís not medical debt. You seem to say itís veterans medical debt, but you seem to say itís not veterans medical debt within the one-year time limit. Itís veterans medical debt generally independent of any time limit. Is that right? So our view is that the subject matter is veteran medical debt. And why not veterans medical debt within the timing window that the provision that sets the federal floor establishes? I think to some extent this gets into sort of a question of how far down do you drill into what the subject matter is. I think just to start at the beginning, I think itís far too broad to say that the subject matter of 1681C is anything that relates to the content of credit reports. I think with respect to veteran medical debt, I think itís too general to say that the subject matter is the reporting of medical debt generally. I think itís veteran medical debt. But then I think once you drill down beyond that and say is the subject just sort of the timing of the reporting, that gets a little bit tougher and I think that would be a much harder argument for us to make that sort of the timing issue sort of makes it a different subject matter. If that makes sense, Your Honor, I donít know if I articulated that very clearly. No, thatís helpful to me. I think my time is up. Yeah, it is. Any further questions? Okay, thank you. You reserve one minute so we can come back to that. I think weíre going to hear from Attorney Wu. Is that right? Thatís right. Good morning, Your Honors. My name is Qiqi Wu, attorney for Amici National Consumer Law Center, Maine Equal Justice, and Maine Coalition Against Domestic Violence. So I want to make something very clear from the outset. What Consumer Data Industry Association, the appellants, are arguing is that the FCRA preempts all state regulation regarding the contents of consumer reports, not just medical debt, not just obsolescence, time periods for negative information, which is one of the main things that the section governs, but any regulation. And to clarify, the FCRA governs more than just credit reports. It would be helpful to me if in your time you could address the question that Iíve asked your colleague, which is, I understand what your opponents are arguing. Iím a little less clear on what your side is arguing as to how to interpret this provision. So with regard to the provision on veteransí medical debt, I was actually involved with legislative conversations over that, and I can just tell you, Congress didnít think about what the consequences would be vis-a-vis preemption. But what weíre arguing is that Congress did not intend to preempt all state regulation of all the contents of credit reports. Well, I understand that, but for us to adopt that view, it would be helpful to understand what they did intend. So what is the affirmative understanding of what they did? So they intended to preempt any state laws regarding obsolescence, how long negative information can stay on. Thereís also provisions about certain information that has to be provided in bankruptcy, closure of accounts. But I understand your question about the scope of is preempted, that youíre not holding entire regulation of state regulation of the contents of consumer reports. Do you have a position with respect to medical debt as to whether we should understand the preemption here to run to veteransí medical debt, veteransí medical debt thatís one year? What is the affirmative? If you donít have one, thatís fine, but it just is somewhat helpful if I was to conclude that their positionís untenable, it would be helpful to know what the position thatís tenable is so I could see whether that, in fact, is tenable or whether we have two untenable propositions to choose among. So our position would be that the preemption would extend to time limits regarding the reporting of veteransí medical debt. And so that would mean that they could, a state could regulate veteransí medical debt just not shifting the timing of it? Thatís correct, Your Honor. So, for example, if you think about judgments, for example, a state could not regulate how long a report, a judgment can be reported, but it can regulate things like judgments canít be reported if theyíre default judgments involving a tenant, which is something that states might be interested in because weíre dealing with a possible eviction crisis and tenant screening is part of that. And how would that play out with respect to veteransí medical debt in particular? What would be available for a state to regulate with respect to veteransí medical debt if the time limit regulation was off the table? All right. So, for example, there are, there is advocacy around the idea of not reporting medical debt at all if it was for a medically necessary procedure. So, veteransí medical debt for a medically necessary procedure. Okay. And then last question is, on the question I asked Mr. Tau, if a state passed a general provision not focused on veteransí medical debt and it was focused on medical debt generally, including with respect to a time limit, but it did not target veteransí medical debt, it was generally applicable, do you have a view whether that would be regulating the subject matter that the provision in the federal law touches on or not? Because that would be helpful for me to know. In other words, would that be preempted because it includes veterans within it? Would it be not preempted at all because itís a different subject matter because its object is different? Or would it be preempted only insofar as it applies to the veterans themselves? It could be preempted as it applies to veterans itself. And certainly I understand this courtís concern that that would be unfortunate. ButÖ Itís not so much that it would be unfortunate, it just seems implausible that Congress would want to have, in helping veterans, make it so that they could never be on equal footing with the rest of the residents of the state. The Veterans Medical Debt Provision was added as a part of a very large bill, S2155. It moved very quickly. I donít think there was any consideration of it. In fact, I can tell you because I talked to the staffer who developed it. Time has expired. Thank you. Any further questions? Thank you. Attorney Wu, you can mute your audio and video at this time. And Attorney Sarvati, if you could unmute your audio and video. And introduce yourself on the record to begin. Good morning, and may it please the court. My name is Jennifer Sarvati, and I represent the appellee in this case, the Consumer Data Industry Association. Congress enacted the bill to establish a uniform consumer reporting system to support a nationwide banking system and to promote consumer access to credit insurance and other tools. And under this system, creditors and other users of reports can evaluate consumers in an objective and uniform way, regardless of where the consumer resides. If the appellantís argument is correct, we would end up with a patchwork of state laws, as, Judge Barron, you have highlighted, that deals with individual consumers in each state in different ways, making it impossible for that national system of banking to stand. That actually puzzles me. Up until these particular amendments, which target specific types of states, were not preempted from regulating the content of reports. So the question, it seems to me, is simply whether, in now adding these changes, they meant to go from a regime in which states could freely regulate the content, to a regime in which they canít regulate it at all, or whether it simply went one from which they could freely regulate it, to which there were certain topics where uniformity was going to be required. I donít really see, maybe you can help me see, what in the text tells me that the better understanding is that, although they tolerated for years and years and years a system in which states had the ability to regulate in a patchwork way, suddenly theyíve decided, ìNope, you canít do it at all.î Thatís a great question, Your Honor. And respectfully, the original form of the provision related to inconsistency, which was the only provision in Subpart T of the Code at the time, said that you could not, as a state, pass laws that were inconsistent with the RCRA. So in fact, they couldnít adopt anything. Right, but you acknowledge that in that world they could adopt a law that was not inconsistent because the act of going above a floor is not inconsistent with the floor. Correct, but in 1994, as part of this massive overhaul of the FCRA, which did a number of things to benefit consumers, it created the right to access to credit report information through file disclosures, it enhanced the furnisher responsibilities, it dealt with dispute. Part of that grand bargain and that massive revision, Congress not only modified the original formulation of the inconsistency provision, but it created a complex preemption regime that would provide broad subject matter preemption for enumerated topics and conduct preemption for specific requirements that the FCRA had adopted with respect to how persons within the industry would behave. I think you just said it provided content preemption for enumerated subjects. That seems inconsistent with the idea that it provided preemption for content regulation bell-none. I thought that was the argument that your opponent was making, that it was subject matter-based. What 1681TB provides, or the subject matter preemption provision says, is that the state may not act with respect to any subject matter regulated under, in this case, 1681C, relating to the information contained within consumer reports. What I believe the appellants were trying to argue is that you have to look to each individual item under subpart C, and only those that are expressly enumerated, your example, veterans debt less than 180 days old, would be preempted. That reading takes the phrase relating to information contained within consumer reports, and turns it into surplusage. In fact, that provision is substantive, and it is modifying and answering the question, what subject matter is regulated under Section 1681C? In fact, if you look at the Congress's intent here, using very broad language of with respect to any subject matter, and then relating to, we understand that it was, in the content of consumer reports. We also know this because Congress did not choose, in this part, to enumerate, as it did in other preemption provisions, only those items it wanted to protect. To protect the national credit reporting system and the uniformity that was clearly so important, they chose specific provisions within the FCRA to get the benefit of subject matter preemption. Moreover, if you take a look at the state's revision, they say, well, we can just take out a lot of the intervening language and say, no requirement or prohibition may be imposed under the laws of any state relating to information contained within consumer reports. As you pointed out, that is not Congress said or intended, but it also couldn't be farther from the truth. There were a number of provisions in the FCRA that relate to information that may be included in reports. You have subsection E, which requires consumer reporting agencies to have reasonable procedures to assure maximum possible accuracy of the information contained within consumer reports. Eliminating that language that appellants suggest is surplusage cannot be done because it fundamentally changes the provision. There's other evidence that Congress intended. What is the significance of the regulated under language on your view, as opposed to subject matter relating to information? I understand why subject matter might matter, but why is regulated under of any significance in your reading? In my view, Your Honor, that was a clear intention from Congress that they are asserting that they regulate this space. This space, with respect to the issue here, is the information to be contained within consumer reports. Just to be clear, it's not doing any substantive work in your view? I think it clarifies the subject matter, but it is not as... If that's right, we've got, if I understand, you say the other side has unable to identify any non-clarifying role, any substantive rather than clarifying role for relating to. And you acknowledge that your reading can't identify any substantive non-clarifying role for regulated under. Now, one thing that one might think, when that was the case, is that that would be a good reason to apply the presumption against preemption and say that Congress wants to do what you say it's done. It should be a little clearer in doing it. Well, I don't think we need to get to the presumption against preemption because, in our view, that the language is, in fact, clear on its face and the presumption against preemption, if it applies at all, would benefit an analysis of a statute that is ambiguous. But here we know it's clear and we know it's what Congress intended because we can look at other provisions that have been given subject matter preemption and Congress wrote them differently, or excuse me, in the same way. They did not write them differently. With respect to subpart B of the subject matter preemption regime, we are talking about the preemption with respect to the timing by which a consumer reporting agency has to provide notice to consumers that they have concluded a reinvestigation. And what the provision says is that state laws are preempted with respect to any subject matter regulated by 1681I, relating to the time by which a consumer reporting agency must take any action, including the provision of notification to the consumer, and it goes on. That's important and illustrative here because 1681I is pages long and details a number of requirements that imposes on a consumer reporting agency as to how they must handle dispute reinvestigations. If relating to phrases in this structure were merely descriptive and not substantive and limiting, then all of 1681I would have been granted subject matter preemption, and it is not. In fact, it is only those portions of 1681I that relate to timing requirements that are preempted from state interference. And when you read that section in that way as a substantive limiting phrase, modifying subject matter regulated under, then you must also read section 1681B1E, our provision at issue, that relating to the information contained within consumer reports is substantive and modifies and explains the subject matter regulated under it as we maintain. I would also like to highlight for the Court that even if this Court wanted to read things somewhat more narrowly, the information that Maine's laws attempt to regulate is well covered in the Fair Credit Reporting Act in a few ways. First, with respect to the medical or the veterans' medical debt that you've highlighted in subsections 7 and 8. But also, section CA6 prohibits the consumer reporting agency from providing information with the trade line or account information that might reveal the consumer's underlying medical condition. And in this way, what Congress has said is that this medical debt may be reported, but it may not be reported in a way that would reveal the consumer's underlying medical condition. And thus, Congress has expressly regulated the medical debt reporting requirements for all consumers. They have provided additional benefits in their election with respect to veterans. And with all due respect to Ms. Wu and additional conversations, Congress knows how to apply a law to all consumers. Before you stop, there's discussion in the briefing of the economic abuse provision. If I understand it, that was not included in the complaint? The economic abuse provision was not referenced in the complaint for this suit? No, that's actually not correct. What was alleged in the complaint was that the economic abuse law and the medical bill law were both preempted under subject matter preemption. That was formed, that was at issue as part of the complaint. It was answered. Appellants complained here, but not below, that when we made the additional argument with respect to conduct preemption, which is provided for under subpart B5, that that was not specifically alleged in the complaint. Our response to that is, number one, it was met fully and briefed by the state below and therefore should not carry any weight here. Was the conduct provision referenced in the complaint, or was only the subject matter provision referenced in the complaint? The subject matter, Your Honor, was referenced in the complaint. Notably, the district court's order could still stand because they did not reach that issue having found subject matter preemption. Thank you. I think we have one minute reserved for rebuttal. If I may, Judge? Oh, I'm sorry, you're right. Attorney Saitlin is going to speak for five minutes. Thank you. Thank you, Your Honors. Misha Saitlin for AMICI, American Financial Services Association and the U.S. Chamber of Commerce. We appreciate, Your Honors, allowing us to participate. The national business community that we represent favors uniform national laws in general and with regard to content of credit reports in particular. If I may, I'd like to say a couple of words about the so-called presumption against preemption that Judge Brannan referenced. In the U.S. Supreme Court's most recent discussion of this, in Puerto Rico v. Franklin, the U.S. Supreme Court made clear that when you have a statute such as this one that contains an express preemption clause, we, quote, do not invoke any presumption against preemption. The overwhelming weight of your sister circuits since the Franklin decision in 2016 have held that that language eliminates any notion of presumption against preemption. The lead case discussing that is the Dialysis-Nuco case of the Fifth Circuit, which references all of the other cases in the sister circuits. And the Dialysis-Nuco case also goes through the Supreme Court's evolution of considering whether a presumption of preemption applies to an express preemption clause. And then finally landing in Puerto Rico v. Franklin on saying there is no such presumption against preemption in the express preemption context. Is that clear with respect to the scope of the express preemption clause? That's exactly right. That's the core holding of that section of Puerto Rico v. Franklin. And that's what all of those cases that are discussed and cataloged in the Dialysis-Nuco decision from the Fifth Circuit reference. And I will also note that my friends on the other side, while they do dispute the import of the Puerto Rico v. Franklin language, they do not dispute, importantly, that the sister circuits have all interpreted, well not all, but the overwhelming weight of them have interpreted that language consistent with our view that a presumption against preemption is no longer appropriate when you have an express preemption clause. There may be appropriate in the situation where there is no express preemption clause and you're trying to determine whether in fact Congress attempted to use its awesome power to preempt state law. But once you have a clear statement like you have here that there is a preemption here, then you just apply it. And on your view, what is the court supposed to do when Congress has put in an express preemption clause that's ambiguous as to its scope? I think your honor should just are required to do, you know, Marbury v. Madison to say what the law is. What if I think it's ambiguous and unclear? What should I do? You should determine which of the parties have the better argument, even if it's 51 percent. One party has a better argument, 49 percent. The other party, you go with the 51 percent. I thought the presumption is most important when it's 50-50. I don't believe that. I mean, I guess it's metaphysically possible for a statute to be so ambiguous that it's 50-50. And, you know, then then you could argue that there's a void for vagueness. Well, how about this? Should I take account of what came before in that there was a world in which they did not have the broad preemption of content? And that in light of that background, I might be wary of concluding in the face of language that is hard to reconcile in a way that gives all of its substantive content rather than just some of it clarifying content. That maybe in that circumstance, it would make sense to assume that if Congress wanted to take the full step of shifting from a regime of allowing much state regulation to relying none to permitting none with respect to content, that they would need to be clearer to make it evident that that was their intention. What would be wrong with that as a best construction of the statute? I think that one could just as easily draw the opposite inferences than making this global. Just as easily? Just as easily draw the opposite inference. Then what would we do? I think, Your Honor, as Justice Kagan famously said, we're all textualists now. I think that rather than speculating about what the subjective intent of Congress was, was it to make this wholesale change or was it to kind of. But you just said just as easily we could come to the opposite. That's just speculation on the other side. That's right, Your Honor. So I think Your Honor should put aside any attempt to, with respect, psychoanalyze Congress and just read the language as it appears in the U.S. Code and the statutes at large and then transport to the U.S. Code. And with regard to that, I would respectfully submit that there is no meaningful surplusage on our reading where there is grievous surplusage on the reading of my friends on the other side. With regard to my friends on the other side, it's not only would they render the phrase relating to information containing consumer reports surplusage. They would render within subsection B the majority of the language of subsection B surplusage because the majority of that language has those relation clauses. And they would render the majority of the language in the preemption provision throughout all 11 provisions. What substantive content do you give to regulated under? All right, so this is how I understand it. So what the statute is saying is that no state may have a requirement or prohibition with respect to subject matter regulated under, and then there's 11 different provisions. Time has expired. If I may, Your Honor. You can finish this, yeah. As your colleague with my friend on the other side shows, that sometimes what the subject matter regulated under a provision is ambiguous. And that what the relating to clauses explain throughout all 11 provisions, including E here, is how broadly to read the phrase subject matter regulated under. Here, it's the broadest possible because it's using the relating to information contains in consumer reports language. With respect, I think you just explained why regulating under is doing no work. Because given the relating to language, you don't need the regulating under language. No, Your Honor. What happens is that Congress has made a structure of 11 different provisions. And what the relating to language does is it gives more content and clarity to what regulated under means with regard to each of the 11. And so, this is not a standalone provision that's just subsection E. There's all 11. And it's a uniform structure. And the relating to clauses each time give clarity and substance to what regulated under means with regard to each individual subsection. Thank you. At this time, Attorney Stateland, if you could please mute your audio and video. And Attorney Taub, you have a one-minute rebuttal. Please reintroduce yourself on the record. Your Honor, it's Chris Taub again. I'd like to use this minute in the way that would be most helpful to the court. I do want to say, though, that our view is that the claim that the presumption against preemption and the idea that you no longer construe ambiguous preemption provisions against preemption, we think that doctrine is still alive and well. I'm happy to address that. But I don't want to waste time if the court has other questions or if there's a different issue that the court thinks would be better addressed. I'd appreciate if you could just address the last point that we just heard about why it makes sense to read regulated under as clarified by relating to in light of the structure of the act. Well, yeah, I don't know what more I can say about it except that I don't understand that the athletes have ever made the argument before that even if a subject matter is covered by a statute. For example, there are things in 1681C that arguably don't really relate to the content of credit reports. I've never understood them arguing before that states are not preempted from those subject areas because it's somehow limited by the phrase relating to information contained in a consumer report. So to put that another way, they have argued that if something is regulated by 1681C, states are preempted in that area. I've never understood them as reading the other phrase as somehow being a limit on that. And again, I don't think Congress all the time in the Federal Aviation Act, in ERISA, Congress knows how to broadly preempt an area. They just say states are preempted from imposing requirements relating to, and then they say a subject area. Time has expired. Thank you. Thank you, Your Honor. That concludes arguments in this case. Attorney Taub, Attorney Wu, Attorney Cervati, and Attorney Saitlin, you should disconnect from the hearing at this time.